**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:23-cr-70 (CJN)** |
| **JESSE JAMES RUMSON,** | |
| **Defendant.** | |

**AMENDED JOINT PRETRIAL STATEMENT**

The United States, by and through its attorneys, together with the defendant, Jesse James Rumson, respectfully submit this Amended Joint Pretrial Statement in advance of the May 13, 2024 bench trial scheduled before this Court in this case, in accordance with the Court's Scheduling Order (ECF 66). This copy corrects a formatting error in the parties' original (ECF 71).

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

*/s/ Anthony Sabatini*             By:     */s/ Samantha R. Miller*
Sabatini Law Firm P.A.                     SAMANTHA R. MILLER
411 N Donnelly St                          Assistant United States Attorney
Suite #313                                 New York Bar No. 5342175
Mount Dora, FL 32757                       United States Attorney's Office
(352)-455-2928                             For the District of Columbia
Anthony@                                    601 D Street, NW 20530
SabatiniLegal.com                          Samantha.Miller@usdoj.gov

                                           SEAN P. MCCAULEY
                                           Assistant United States Attorney
                                           NY Bar No. 5600523
                                           United States Attorney's Office
                                           601 D Street NW
                                           Washington, DC 20530
                                           Sean.McCauley@usdoj.gov

1

**JOINT PRETRIAL STATEMENT**

**A. Proposed Bench Instructions.**

The Indictment in this matter (ECF 8) charges the defendant with the below-listed crimes. Unless otherwise indicated, the parties jointly propose the below legal instructions.

    i.   *Count One: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).*[1]

Count One charges the defendant with obstructing law enforcement officers during a civil disorder, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with Officer S.A., an officer from the Prince George's County Police Department.

Second, at the time of the defendant's actual or attempted act, Officer S.A. was engaged in the lawful performance of his official duties incident to and during a civil disorder.

Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

---

[1] *United States v. Jensen*, 21-cr-6 (TJK) (ECF 97 at 21-22), *United States v. Webster*, 21-cr-208 (APM) (ECF 101 at 15-16), *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF 172 at 17), and *United States v. DaSilva*, 21-cr-564 (CJN) (ECF 76 at 2-3); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF 50 at 22); *United States v. Alam*, 21-cr-190 (DLF) (ECF 104 at 26); *see also United States v. Grider*, 651 F. Supp. 3d 1, 13 (D.D.C. 2022) ("[T]he Court need not find that the defendant's actions *in fact* obstructed law officer officers. Rather, the Court need only find that the defendant committed or attempted to commit an act with the *specific intent* to obstruct law enforcement officers.").

Definitions

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia. It also means commerce wholly within the District of Columbia.[2]

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.[3]

The term "department" includes one of the departments of the executive branch (such as the Department of Homeland Security, which includes the United States Secret Service) or the legislative branch. The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States. The term "instrumentality" includes any other formal entity through which the government operates, such as Congress or the United Sates Capitol Police.[4]

---

[2] Modified definition of 18 U.S.C. § 232(2) from jury instructions in *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *see also United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF 172 at 18); *United States v. Thomas*, 21-cr-552 (DLF) (ECF 150 at 21).

[3] *See* 18 U.S.C. § 232(3).

[4] *See, e.g.*, *United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152 (D. Colo. 2008) ("'When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary.' *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted). Dictionary definitions of the word 'instrumentality' generally are broad. Black's Law Dictionary defines 'instrumentality' as '[a] thing used to achieve an end or purpose.' Black's Law Dictionary 814 (8th ed. 1999). Webster's Third New International Dictionary defines 'instrumentality' as 'something by which an end is achieved' or "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out.'

For the Prince George's County Police Department on January 6, 2021, the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.[5]

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did, said, or perceived.[6]

---

Webster's Third New International Dictionary 1172 (1971)."). For January 6 cases using this instruction, see *United States v. Gietzen*, 22-cr-116 (CJN) (ECF 50 at 23), *United States v. Alam*, 21-cr-190 (DLF) (ECF 104 at 26), *United States v. Christensen*, 21-cr-455 (RCL) (ECF 72 at 9), and *United States v. McAbee*, 21-cr-35 (RC) (ECF 376, at 29-30).

[5] *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF 172 at 19); *United States v. Christensen*, 21-cr-455 (RCL) (ECF 72 at 9); *United States v. McAbee*, 21-cr-35 (RC) (ECF 376, at 30). *See, e.g.*, Fifth Circuit Pattern Criminal Jury Instruction No. 2.07; Tenth Circuit Pattern Criminal Jury Instruction No. 2.09; Eleventh Circuit Pattern Criminal Jury Instruction No. O1.1; *United States v. Smith*, 743 F. App'x 943, 949 (11th Cir. 2018) ("Furthermore, the district court instructed the jury regarding the Task Force's duties, stating: 'A member of the U.S. Marshals Regional Fugitive Task Force is a Federal officer and has the official duty to locate and apprehend fugitives.'"); *United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) ("The instruction states only that the activity of looking for a suspect is official conduct. We find no error in the district court's instruction characterizing this aspect of the marshals' conduct as official duty."); *United States v. Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981) ("'Instruction No. 10. Among the official duties of officers and agents of the United States Geological Service of the United States Interior Department are inspections of oil drilling apparatus to insure compliance with various Federal laws.' We think the above language of the charge employed by the trial judge reveals no insufficiency in defining the offense.").

[6] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB) (ECF 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL) (ECF 101 at 9) (same); *United States v. Gunby*, 21-cr-626 (PLF) (ECF 57 at 7) (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)); *United States v. Christensen*, 21-cr-455 (RCL) (ECF 72 at 9) (same).

ii.  *Count Two: Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a).*[7]

Count Two of the Indictment charges the defendant with assaulting, resisting, or impeding Officer S.A., an officer from the Prince George's County Police Department who was a person assisting officers of the United States who are engaged in the performance of their official duties, which is a violation of federal law.

Elements

To find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer S.A., an officer from the Prince George's County Police Department.

Second, the defendant did such acts forcibly.

Third, the defendant did such acts voluntarily and intentionally.

Fourth, Officer S.A. was assisting officers of the United States who were then engaged in the performance of their official duties.

Fifth, the defendant made physical contact with Officer S.A., or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count One.[8]

Definitions

A person acts "forcibly" if he used force, attempted to use force, or threatened to use force against the officer. Physical force or contact is sufficient but actual physical contact is not required.

_____

[7] For January 6 trials that have used similar instructions, see *United States v. Gietzen*, 22-cr-116 (CJN) (ECF 50 at 23 and 26); *United States v. Alam*, 21-cr-190 (DLF) (ECF 104 at 22).
[8] *United States v. Harris*, 21-cr-189 (CJN) (Transcript of Closing Arguments and Bench Verdict, Jun. 14, 2023, at 100).

You may also find that a person who has the present ability to inflict bodily harm upon another

and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case,

the threat must be a present one.[9]

The term "assault" means any intentional attempt or threat to inflict injury upon someone

else, when coupled with an apparent present ability to do so. To find that the defendant committed

an "assault," you must find beyond a reasonable doubt that the defendant intended to inflict or to

threaten injury. Injury means any physical injury, however small, including a touching offensive

to a person of reasonable sensibility.[10]

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their

everyday, ordinary meanings.

It is not necessary to show that the defendant knew the person being forcibly assaulted,

resisted, opposed, impeded, intimidated, or interfered with was, at that time, assisting federal

---

[9] *United States v. Taylor*, 848 F.3d 476, 493 (1st Cir. 2017) (The element of 'forcible' action can be met by a showing of either physical contact with the federal agent, or by such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.") (quotation marks omitted) (citing cases). For a January 6 case using this definition, see *United States v. McAbee*, 21-cr-35 (RC) (ECF 376, at 19).

[10] *United States v. Watts*, 798 F.3d 650, 654 (7th Cir. 2015) ("an assault may also be committed by a person who intends to threaten or attempt to make offensive rather than injurious physical contact with the victim"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012) ("Because Section 111 does not define assault, we have adopted the common law definition of assault as either (1) a willful attempt to inflict injury upon the person of another, or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.") (quotation marks omitted); *Comber v. United States*, 584 A.2d 26, 50 (D.C. 1990) (en banc) (explaining that the crime of simple assault "is designed to protect not only against physical injury, but against all forms of offensive touching, . . . and even the mere threat of such touching"); Criminal Jury Instructions for the District of Columbia, No. 4.100 (2022 ed.) ("Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility."). For other January 6 trials that have used similar instructions, see *United States v. Jensen*, 21-cr-6 (TJK) (ECF 97 at 30), *United States v. Webster*, 21-cr-208 (APM) (ECF 101 at 14), *United States v. Alam*, 21-cr-190 (DLF) (ECF 104 at 23), and *United States v. McAbee*, 21-cr-35 (RC) (ECF 376, at 19-20).

officers in carrying out an official duty so long as it is established beyond a reasonable doubt that the officer was, in fact, assisting a federal officer acting in the course of his duty and that the defendant intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with that officer.[11]

      iii.    *Count Three: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1).*[12]

Count Three of the Indictment charges the defendant with entering or remaining in a restricted building or grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.[13]

---

[11] *United States v. Celentano*, 22-cr-186 (TJK) (ECF 64 at 12); *United States v. Thomas*, 21-cr-552 (DLF) (ECF 150 at 30); *United States v. McAbee*, 21-cr-35 (RC) (ECF 376, at 20-21).

[12] 18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021).  For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF 96 at 26); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF 103 at 8-9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF 50 at 30).

[13] The government's position is that Section 1752 requires proof that the defendant knew he or she acted in a restricted building or grounds without lawful authority, but does not require proof that the defendant knew the reason the area was restricted due to the presence of a U.S. Secret Service protectee. *United States v. Carnell et al.*, 23-cr-139 (BAH) (Memorandum Opinion, Feb. 15, 2024, ECF 98 at 10-12). "Under Section 1752, the USSS-protectee requirement in a part of the definitional subsection has no bearing on the "wrongfulness [or] innocence" of the conduct, and proof of knowledge of the USSS-protectee requirement is accordingly not required." *Id.* at 31. Several other courts in this district have similarly held that knowledge of the reason the area was restricted is not required. *See* Trial Tr. at 1199–1200, *United States v. Vo*, No. 21-cr-509 (TSC), ECF 130 (D.D.C. Sept. 22, 2023) (Chutkan, J.); Trial Tr. at 8, *United States v. Eicher*, No. 22-cr-38 (BAH) (D.DC. June 14, 2023) (Howell, J.); Mem. Court's Responses to Jury Questions at 4, *United States v. Rhine*, No. 21-cr-687 (RC), ECF 104 (D.D.C. Apr. 24, 2023) (Contreras, J.); Trial

<u>Definitions</u>

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count One. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did, said, or perceived.[14]

**Defense-requested additional instruction:** [15]

The government must prove that the defendant knew that he had entered or remained in what he knew to be a restricted building or grounds and that he knew that he did not have lawful

---

Tr. at 330–32, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF 106 (D.D.C. Mar. 22, 2022) (McFadden, J.).

Nonetheless, the government recognizes that some courts in this district, including this Court, have come to the opposite conclusion; although the government's position is that those opinions came to the wrong result, should this Court adopt an *Elizalde* formulation of the Section 1752 instructions, the government will not re-litigate the issue in this matter and will simply note its objection for the record. *See United States, v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023); *see also* Verdict Tr. at 4, *United States v. Samsel*, No. 21-cr-537 (JMC) (D.D.C. Feb. 2, 2024) (Cobb, J.); *United States v. Groseclose*, 21-cr-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J.).

[14] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB) (ECF 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL) (ECF 101 at 9) (same); *United States v. Gunby*, 21-cr-626 (PLF) (ECF 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)).

[15] *United States v. Elizalde*, 23-cr-170 (CJN) (ECF 40 at 1).

authority to enter that area. It is insufficient for the government to prove that the defendant merely knew that the area he entered or remained in was restricted in the colloquial sense. The government must instead prove that (A) the defendant knew that the area was posted, cordoned off, or otherwise restricted and (B) the defendant knew that the Vice President or the Vice President's immediate family was or would be temporarily visiting the area.

> iv.   *Count Four: Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2).* [16]

Count Four of the Indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

---

[16] 18 U.S.C. § 1752. For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF 82 at 6-7); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF 96 at 27); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF 103 at 9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF 50 at 32); *United States v. Horn*, 21-cr-301 (TJK) (ECF 82 at 13).

Definitions

"Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety.[17] Disorderly conduct includes when a person acts in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.[18]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[19]

The terms "knowingly" and "restricted building or grounds" have the same meanings described in the instructions for Counts One and Three.

### Defense-requested additional instructions: [20]

The government must prove that the defendant knew that his conduct was disorderly or disruptive.

The terms "restricted building or grounds" and "knowingly" have the same meanings and relationship as in the instructions for Count Three.

---

[17] *United States v. Grider*, 21-cr-22 (CKK) (ECF 150 at 24) ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").
[18] *United States v. Schwartz, et al,*, 21-cr-178 (APM) (ECF 172 at 27); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF 50 at 32); *United States v. Alam*, 21-cr-190 (DLF) (ECF 104 at 237-38).
[19] Redbook 6.643.
[20] *United States v. Elizalde*, 23-cr-170 (CJN) (ECF 40 at 2).

     *v.*    <u>*Count Five: Engaging in Physical Violence in a Restricted Building or Grounds,*</u> <u>*in violation of 18 U.S.C. § 1752(a)(4).*</u> [21]

Count Five of the Indictment charges the defendant with engaging in physical violence in a restricted building or grounds, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

     First, the defendant engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.

     Second, the defendant did so knowingly.

<u>Definitions</u>

The term "act of physical violence" means any act involving an assault or other infliction of bodily harm on an individual; or damage to, or destruction of, real or personal property.

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Counts One, Three, and Four.

**Defense-requested additional instructions:[22]**

The terms "restricted building or grounds" and "knowingly" have the same meanings and relationship as in the instructions for Count Three.

---

[21] *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF 172 at 30); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF 50 at 34); *United States v. Alam*, 21-cr-190 (DLF) (ECF 104 at 40); *United States v. Christensen*, 21-cr-455 (RCL) (ECF 72 at 18); *United States v. McAbee*, 21-cr-35 (RC) (ECF 376, at 40-41).
[22] Elements taken partly from *United States v. Elizalde*, 23-cr-170 (CJN) (ECF 40 at 1).

vi.   <u>*Count Six: Disorderly Conduct in a Capitol Building or Grounds, in violation of*
   *40 U.S.C. § 5104(e)(2)(D).*</u>[23]

Count Six of the Indictment charges the defendant with disorderly and disruptive conduct in a Capitol Building or Grounds, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

Third, the defendant acted willfully and knowingly.

<u>Definitions</u>

The term "House of Congress" means the United States Senate or the United States House of Representatives.

The terms "Capitol Buildings" and "Capitol Grounds" have the same meaning described in the instructions for Counts Three, Four, and Five. "Disorderly conduct" and "disruptive conduct" have the same meaning described in the instructions for Count Four. For purposes of this offense, "the orderly conduct of a session of Congress or either House of Congress" includes the actions of Congress' Joint Session to certify the Electoral College vote.[24]

---

[23] *United States v. Barnett*, 21-cr-38 (CRC) (ECF 158 at 22); *United States v. Jenkins*, 21-cr-245 (APM) (ECF 78 at 31); *United States v. Jensen*, 21-cr-6 (TJK) (ECF 97 at 40); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40); *United States v. Eicher*, 22-cr-38 (BAH) (ECF 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF 96 at 28); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF 103 at 10-11).
[24] *See United States v. Kelly*, 21-cr-708 (RCL) (ECF 101 at 17).

The term "knowingly" has the same meaning described in the instructions for Counts One, Three, Four, and Five.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. While the government must show that a defendant knew that the conduct was unlawful, the government does not need to prove that the defendant was aware of the specific law that his conduct violated.[25]

      *vii.*    *Count Seven: Engaging in Physical Violence in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F).*[26]

Count Seven of the Indictment charges the defendant with an act of physical violence in the Capitol Building or Grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

Second, the defendant acted willfully and knowingly.

---

[25] As the Supreme Court has explained, "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998) (internal quotation marks omitted). "As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a bad purpose. In other words, in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Id.* at 191-92 (internal quotation marks omitted).
[26] *United States v. Alberts*, 21-cr-26 (CRC) (ECF 147 at 20); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF 50 at 36); *United States v. Alam*, 21-cr-190 (DLF) (ECF 104 at 43), *United States v. Christensen*, 21-cr-455 (RCL) (ECF 72 at 19). *See also United States v. Jones*, 21-cr-213 (RJL) (ECF 75 at 9-10) (notes for bench verdict setting out elements and defining "act of physical violence" to include destruction of property).

Definitions

The term "act of physical violence" means any act involving an assault or other infliction or threat of infliction of death or bodily harm on an individual; or involving damage to, or destruction of, real or personal property.

The terms "Capitol Buildings" and "Capitol Grounds" have the same meaning described in the instructions for Counts Three and Four. The term "knowingly" has the same meaning described in the instructions for Counts One, Three, Four, and Five.

viii.   _Count Eight: Parading, Demonstrating, or Picketing in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(G)._[27]

Count Eight of the Indictment charges the defendant with parading, demonstrating, or picketing in a Capitol Building, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

Second, the defendant acted willfully and knowingly.

Definitions

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding

---

[27] _United States v. Barnett_, 21-cr-38 (CRC) (ECF 158 at 23); _United States v. Jensen_, 21-cr-6 (TJK) (ECF 97 at 42); _United States v. Williams_, 21-cr-618 (ABJ) (ECF 122 at 40); _United States v. Eicher_, 22-cr-38 (BAH) (ECF 82 at 7); _United States v. Lesperance, et al._, 21-cr-575 (JDB) (ECF 96 at 29); _United States v. Chwiesiuk, et al._, 21-cr-536 (ACR) (ECF 103 at 11); _United States v. Horn_, 21-cr-301 (TJK) (ECF 82 at 19).

or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[28]

The terms "Capitol Buildings" and "Capitol Grounds" have the same meaning described in the instructions for Counts Three, Four, Five, Six, and Seven. The terms "knowingly" and "willfully" have the same meaning described in the instructions for Counts Five and Six.

 The terms "knowingly" and "willfully" have the same meaning described in the instructions for Counts Five, Six, and Seven.

    *ix.*   *Other requested instructions.*

Because these are bench rather than jury instructions, the government has not separately listed the below attempt and aiding and abetting instructions after the instructions for each individual charge.  However, the government has provided these instructions because it intends to rely on an attempt and/or an aiding and abetting theory with respect to each and every charge in the Indictment (ECF 8).

**ATTEMPT**[29]

In Count [insert applicable count], the defendant is also charged with attempt to commit the crime of [insert applicable crime].  An attempt to commit [insert applicable crime] is a crime even if the defendant did not actually complete the crime.

In order to find the defendant guilty of attempt to commit [insert applicable crime], you must find that the government proved beyond a reasonable doubt each of the following elements:

First, that the defendant intended to commit the crime of [insert applicable crime],

---

[28] *United States v. Barnett*, 21-cr-38 (CRC) (ECF 158 at 23); *United States v. Alam*, 21-cr-190 (DLF) (ECF 104 at 44). *See also Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

[29] Redbook 7.101; The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit § 4.09; Third Circuit Pattern Jury Instructions 7.01.  *See United States v. Fellows*, 21-cr-83 (TNM) (ECF 140 at 28); *United States v. McAbee*, 21-cr-35 (RC) (ECF 376, at 30-32).

as I have defined that offense above.

Second, that the defendant took a substantial step toward committing [insert applicable crime] which strongly corroborates or confirms that the defendant intended to commit that crime.

With respect to the first element of attempt, you may not find the defendant guilty of attempt to commit [insert applicable crime] merely because the defendant thought about it. You must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, you may not find the defendant guilty of attempt to commit [insert applicable crime] merely because the defendant made some plans to or some preparation for committing that crime. Instead, you must find that the defendant took some firm, clear, undeniable action to accomplish his intent to commit [insert applicable crime]. However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.

## AIDING AND ABETTING[30]

In this case, the government further alleges that the defendant committed [insert applicable crime], as charged in Counts [insert applicable count], by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count [insert applicable count].

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal.

---

[30] 18 U.S.C. § 2(a); Third Circuit Model Jury Instructions 7.02. *See United States v. Fellows*, 21-cr-83 (TNM) (ECF 140 at 29-31); *United States v. McAbee*, 21-cr-35 (RC) (ECF 376, at 21-25).

It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of [insert applicable crime] because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that others committed [insert applicable crime] by committing each of the elements of the offense charged, as I have explained above.

Second, that the defendant knew that [insert applicable crime] was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of [insert applicable crime].

Fifth, that the defendant did that act or acts with the intent that others commit the offense of [insert applicable crime].

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged

only one or some parts or phases of the offense.  Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor.  If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of [insert applicable crime] as an aider and abettor.  The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

**

A defendant may be found guilty of the offense charged in Count [insert applicable count] if the defendant [insert applicable crime], attempted to [insert applicable crime], or aided and abetted [insert applicable crime].  Each of these three ways of committing the offense is described in the instructions above.  If I find beyond a reasonable doubt that the defendant committed the offense of [insert applicable crime] in any one of these three ways, I can find the defendant guilty of Count [insert applicable count], and I need not consider whether the defendant committed the offense of [insert applicable crime] in the other two ways.

B. **List of Witnesses.**

    i.   *Government's anticipated witness list.*

        The government's anticipated witness list is below.

|   | Last Name | First Name | Title & Agency | Will Call | May Call |
|---|-----------|------------|----------------|-----------|----------|
| 1 | Mendoza | Carneysha | Captain, U.S. Capitol Police | x | |
| 2 | Hawa | Lanelle | Inspector, U.S. Secret Service | | x |
| 3 | Parker | Ryan | Officer, U.S. Capitol Police | x | |
| 4 | Nicholas | Jamal | Officer, U.S. Capitol Police | | x |
| 5 | Foskett | Luke | Sergeant, Metropolitan Police Department | x | |
| 6 | Ainsworth | Scott | Corporal, Prince George's County Police Department | x | |
| 7 | Leano | Dan Patrick | Officer, Metropolitan Police Department | | x |
| 8 | Smith | Brian | Special Agent, FBI | x | |
| 9 | Hammond | Samantha | Defendant's girlfriend | | x |
| 9 | Lane | Robert | Defendant's roommate | | x |

        The government will call Captain Carneysha ("Neysha") Mendoza from the Capitol Police who will provide an overview of the U.S. Capitol building and grounds and explain how the building and grounds were protected and then overrun on January 6, 2021. The government will present video footage that will document what occurred as the U.S. Capitol grounds and building were breached. The video evidence will include U.S. Capitol Police closed-circuit video (CCTV).

        The government may call U.S. Secret Service Inspector Lanelle Hawa to testify regarding the Secret Service's protection of Vice President Pence on January 6, 2021.

        The government will also call at least one U.S. Capitol Police Officer who was present in the Brumidi Corridor, which is the hallway into which the Parliamentarian Door to the U.S. Capitol building opens. The breached Parliamentarian Door was the one through which the defendant

entered the U.S. Capitol building; he then proceeded into the Brumidi Corridor. The U.S. Capitol Police Officer witness will explain how this particular area of the U.S. Capitol building was overrun on January 6, 2021 by rioters, including the defendant. The government will present video footage that will document what occurred in this area, which will include CCTV footage as well as open-source photographs and videos.

The government will also call at least one Metropolitan Police Department (MPD) officer will also testify about his experiences on January 6, 2021, with particular attention to his experience in the U.S. Capitol building generally, the Brumidi Corridor specifically, and the Upper West Terrace, just outside the Senate Wing Door and Parliamentarian Door. The MPD officer will also discuss relevant body worn camera (BWC) footage as well as open-source photographs and videos.

The government will also call Corporal Scott Ainsworth from the Prince George's County Police Department (PGPD), who is the named victim of the defendant's assault. He will testify about his experiences on the Upper West Terrace area of the Capitol grounds on January 6, 2021 and his memory of the events in and around the time of the defendant's assault. Corporal Ainsworth will also discuss relevant body worn camera (BWC) footage from MPD officers standing near him, as well as open-source photographs and videos.

Finally, the government will also call the case agent, Special Agent Brian Smith, of the Federal Bureau of Investigation. Special Agent Smith will introduce several "open source" or "third party" videos from January 6, 2021 that were collected over the course of this investigation. Special Agent Smith will also discuss relevant body worn camera (BWC) footage from MPD officers that were in or near the defendant at key time periods, as well as open-source photographs and videos. Special Agent Smith may also discuss his interactions with the defendant during the

defendant's arrest, as well as the custodial interview given by the defendant at that time. Special Agent Smith will also offer business records from a grocery store impacted by the events of January 6, 2021.

ii.   _Defendant's anticipated witness list._

The defendant's anticipated witness list is below.

|   | Last Name | First Name | Title & Agency | Will Call | May Call |
|---|-----------|------------|----------------|-----------|----------|
| 1 | Rumson | Jesse | Defendant | | x |
| 2 | Eileen | Redding | Friend | x | |
| 3 | Hammond | Samantha | Girlfriend | x | |

Redding is a nurse.  She is Rumson's friend and neighbor who will discuss Rumson's mental state and physical being around the time period surrounding January 6th.

Hammond is Rumson's fiancée who will discuss Rumson's mental state and physical being around the time period surrounding January 6th.

iii.   _Government's objections to defendant's anticipated witness list._

The government does not object to the defendant calling Mmes. Redding and Hammond as witnesses. However, the government fails to see how the defendant's "physical being" in and around January 6 is relevant to this case.  More importantly, because the defendant has indicated he will call these witnesses as fact witnesses to testify to the defendant's "mental state," the government has concerns about whether these witnesses can provide relevant testimony that is not based on hearsay.  Indeed, beyond his physical appearance, the only way these witnesses could testify as to the defendant's "mental state" is through inadmissible hearsay based on what the defendant _told these witnesses_ about his mental state around that time.  The government therefore anticipates it will raise hearsay objections at trial during this testimony.

On May 1, 2024, the government formally requested all reverse-Jencks for these witnesses and is awaiting those materials.

### C.  Exhibit Lists

The government's anticipated exhibit list is attached hereto as <u>Attachment 1</u>.   The defendant relies on the government's exhibit list for his own exhibit list.

### D.  Stipulations

The parties have agreed to below joint stipulations.   No party shall be prohibited from calling witnesses to testify about, or introducing evidence to establish, any of the facts listed in these stipulations.

**Stipulation #1:**
**<u>The Capitol Building and Grounds</u>**

By law, the U.S. Capitol, which is located at First Street, S.E., in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP).   Only authorized people with appropriate identification are allowed access inside the Capitol.   At the U.S. Capitol, the building itself has 540 rooms covering 175,170 square feet of ground, roughly four acres.   The building is 751 feet long (roughly 228 meters) from north to south and 350 feet wide (106 meters) at its widest point. The U.S. Capitol Visitor Center is 580,000 square feet and is located underground on the east side of the Capitol.   On the west side of the Capitol building is the West Front, which includes variety of open concrete spaces, a fountain surrounded by a walkway, two broad staircases, and multiple terraces at each floor.   On January 6, 2021, the inaugural stage scaffolding was on the West Front of the Capitol building. On the East Front are three staircases, porticos on both the House and Senate side, and two large skylights into the Visitor's Center surrounded by a concrete parkway.

**Stipulation #2:**
**The Certification of the Electoral College Vote**

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in both the House and Senate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020.

On January 6, 2021, the House of Representatives began its session at approximately 12:00 p.m., the Senate began its session at approximately 12:30 p.m., and the two Houses met together at approximately 1:00 p.m. in the House of Representatives chamber to begin the joint session. Vice President Mike Pence was in the Capitol building and presiding over the joint session.  At approximately 1:15 p.m., the House and Senate adjourned to their separate chambers for up to two hours to resolve a particular objection.

At approximately 2:12 p.m., Vice President Pence evacuated the Senate chamber, and approximately one minute later the senator who had become the presiding officer in Vice President Pence's absence declared that the Senate would stand in recess.  Senators evacuated the Senate chamber.

At approximately 2:15 p.m., Speaker Nancy Pelosi, who was presiding over the House of Representatives, evacuated the House chamber, and approximately fifteen minutes later the representative who had become the presiding officer in her absence declared that the House would stand in recess.  Representatives evacuated the House chamber.

The joint session was suspended.

The Senate and House resumed meeting at approximately 8:06 p.m. and 9:02 p.m., respectively.  Congress's joint session continued until approximately 3:44 a.m. on January 7, 2021,

when it completed the certification of the Electoral College vote.

### Stipulation #3:
### Officers from the United States Capitol Police

On January 6, 2021, officers from the United States Capitol Police (USCP) on the U.S. Capitol grounds and in the U.S. Capitol building were engaged in their official duties as officers or employees of the United States or of any agency in any branch of the United States Government, as those terms are used in Title 18, United States Code, Section 1114.

### Stipulation #4:
### United States Capitol Police Closed Circuit Video Monitoring

The United States Capitol Police (USCP) operate and maintain closed-circuit video monitoring and recording equipment that captures locations inside and outside of the U.S. Capitol building and on the Capitol grounds. The video equipment timestamps each recording with the date and time at which the footage is captured. The USCP-controlled video equipment was in good working order on January 6, 2021, and video footage recovered from the cameras and equipment with the timestamp of January 6, 2021, is footage from January 6, 2021. The events depicted in the video footage contained in Government Exhibit Series ___ are fair and accurate depictions of the events at the U.S. Capitol on January 6, 2021. The timestamps on the recordings are accurate, and the video footage was not altered or edited in any way. The video footage, including the footage contained in these exhibits, is authentic in that it is what it purports to be. The video and/or other copies are "admissible into evidence to the same extent as the original," within the meaning of Federal Rule of Evidence 1003.

## Stipulation #5:
## Metropolitan Police Department Body Worn Cameras

On January 6, 2021, most of the Metropolitan Police Department (MPD) officers who responded to the U.S. Capitol building were equipped with body worn cameras (BWC).  The BWC passively records the previous two minutes of video but not audio until it is activated by the officer, at which point the BWC begins recording both video and audio until the officer deactivates it.

The BWC equipment timestamps each recording with the date and time at which the footage is captured.   The MPD's BWC equipment was in good working order on January 6, 2021, and recordings bearing the timestamp of January 6, 2021, contain footage from January 6, 2021. The timestamps are accurate.  The events depicted in the MPD BWC video footage contained in Government Exhibit Series 500 are fair and accurate depictions of the events at the U.S. Capitol on January 6, 2021.  The BWC video footage was created using reliable methods, was not altered or edited in any way, and is authentic in that it is what it purports to be.  The BWC footage, including the footage contained in these exhibits, is authentic in that it is what it purports to be. The video and/or any other copies are "admissible into evidence to the same extent as the original," within the meaning of Federal Rule of Evidence 1003.

## Stipulation #6:
## Third Party and Open Source Videos

The events depicted in the video footage and photographs from Government Exhibit Series 400, labeled under the Category "Third Party and Open Source Evidence" are a fair and accurate depiction of the events at the U.S. Capitol on January 6, 2021 and the video footage was not altered or edited in any way.  The video footage is authentic in that it is what it purports to be and may be introduced into evidence at trial without establishing additional foundation beyond

this stipulation.  The videos and/or any other copies are "admissible into evidence to the same extent as the original," within the meaning of Federal Rule of Evidence 1003.

### Stipulation #7:
### Additional CSPAN Footage

On January 6, 2021, former President Donald Trump gave a speech at the Stop the Steal Rally at the Ellipse in Washington, D.C. The speech was recorded and broadcast through the Cable-Satellite Public Affairs Network (CSPAN). The video footage contained in Government Exhibit 201 and its subparts are fair and accurate depictions of portions of Former President Trump's speech on January 6, 2021. The video footage was not altered or edited in any way. The video footage is authentic in that it is what it purports to be.

### Stipulation #8:
### U.S. Capitol Police Montage Video

Government Exhibit 114 is a montage video of the events at certain areas of the U.S. Capitol on January 6, 2021.  The events depicted in the video montages are fair and accurate depictions of events at the U.S. Capitol on January 6, 2021.  The timestamps on the recordings are accurate and the video footage, including radio run audio, is authentic in that it is what it purports to be and may be introduced into evidence at trial without establishing additional foundation beyond this stipulation.  The footage and/or any other copies are "admissible into evidence to the same extent as the original," within the meaning of Federal Rule of Evidence 1003.

### Stipulation #9:
### Identification

On January 6, 2021, defendant Jesse James Rumson was a white male, thinly built, with shaggy brown hair, a full, brown beard, and a nose ring.  The defendant was wearing an army green backpack, camouflage pants, a black t-shirt with white writing, and a gray zip-up hoodie with dark sleeves that included a red and gray striped band around the elbow area. At times on

January 6, 2021, the defendant was wearing a large headpiece that appeared to be from a panda costume. The defendant was initially carrying brown, wood rosary beads and a silver flagpole with a white flag with black writing.  The person indicated in yellow in the photographs/screenshots below is defendant Rumson.

Government Exhibit 401 is a fair and accurate depiction of defendant Rumson wearing the panda headpiece on January 6, 2021.



Government Exhibit 403 is a fair and accurate depiction of defendant Rumson while holding the panda headpiece in his hands on January 6, 2021.



Government Exhibit 405 is a fair and accurate depiction of defendant Rumson while wearing the panda headpiece on grounds outside of the U.S. Capitol building on January 6, 2021.



Government Exhibit 414 is a fair and accurate depiction of defendant Rumson wearing the panda headpiece inside the U.S. Capitol building on January 6, 2021.



Government Exhibit 314 is a fair and accurate depiction of defendant Rumson without the panda headpiece inside the U.S. Capitol building on January 6, 2021.



Government Exhibits 430 and 435 are a fair and accurate depictions of defendant Rumson without the panda headpiece while on grounds outside of the U.S. Capitol building on

January 6, 2021.



**Stipulation #10:**
**Defendant Rumson Interview**

The FBI interviewed defendant Rumson on February 27, 2023. Government Exhibits 603 (video), 604 (audio only), and 605 (waiver and attachments) are true and accurate copies of recordings of that interview and the materials shown to the defendant during the interview.

**Stipulation #11:**
**Residential Search and Seizure**

On August 17, 2021, FBI agents executed a lawful search warrant for defendant Rumson's residence, located at 135 S Scarboro Ave., Lecanto, Florida 34461. As a result of that search, FBI agents seized the following items, among others:

1. A pair of green/brown camouflage pants
2. A gray/black/maroon jacket
3. 3 digital devices

*See* Government Exhibit 606 (FBI Receipt for Property). All of the above items belonged to the defendant. Government Exhibits 601, 602, and 606 are true and accurate originals of physical evidence and copies of the FBI Receipt for Property executed during the search.

### Stipulation #12:
### Mayor's Order and Safeway Evidence

On January 6, 2021, at around 3:45 p.m., in response to Mayor Bowser's order imposing a curfew in the District of Columbia because of the events at the U.S. Capitol, Safeway closed all 12 of its stores in the District of Columbia as of 4 p.m. Safeway's stores were supposed to close at 11 p.m. Safeway later determined that its District of Columbia stores made between 18% and 47% less in sales to the public on January 6, 2021, than they had been projected to make on that day. *See* Government Exhibit

Safeway's District of Columbia stores receive their shipments from a warehouse in Pennsylvania. After 4 p.m. on January 6, 2021, the scheduled shipments for the remainder of the day could not be delivered because the stores were closed and no employees were working.

The parties agree that the factfinder should consider Government Exhibit Series 700 in the same way as if the exhibits had been properly admitted through testimony at trial to establish the above facts.

\*      \*      \*

**Stipulation #14:**
**Authenticity and Admissibility of Government Exhibits**

The parties agree and stipulate as to the authenticity and admissibility of each and every

exhibit on the Government's exhibit list.


Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


*/s/ Anthony Sabatini*              By:     */s/ Samantha R. Miller*
Sabatini Law Firm P.A.                     SAMANTHA R. MILLER
411 N Donnelly St                          Assistant United States Attorney
Suite #313                                 New York Bar No. 5342175
Mount Dora, FL 32757                       United States Attorney's Office
(352)-455-2928                             For the District of Columbia
Anthony@                                   601 D Street, NW 20530
SabatiniLegal.com                          Samantha.Miller@usdoj.gov

                                           SEAN P. MCCAULEY
                                           Assistant United States Attorney
                                           NY Bar No. 5600523
                                           United States Attorney's Office
                                           601 D Street NW
                                           Washington, DC 20530
                                           Sean.McCauley@usdoj.gov